# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GEORGIA WILLIAMS, | : | |
| Plaintiff, | : | Case No. 3:06CV275 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

On May 25, 2000, Plaintiff Georgia Williams – a former auto detailer, parts assembler, and commercial cleaner – stopped working due to various physical and mental impairments including, for example, arthritis in several joints, pain, depression, and anxiety. (Tr. 66-68, 75). Later that year Williams filed an application with Social Security Administration for Disability Insurance Benefits (DIB).

DIB is available to those who convince the Social Security Administration that they are under a "disability" (among other eligibility requirements). *Bowen v. City of*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

*New York*, 476 U.S. 467, 470 (1986).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.[2]

Williams brings this case (her second) challenging the Social Security Administration's determination that she is not under a "disability" and its resulting denial of her DIB application.  Her case is presently before the Court upon Williams' Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Williams' Reply (Doc. #11), the administrative record, and the record as a whole.

Williams seeks, at a minimum, a remand of this case to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.  ADDITIONAL BACKGROUND

### A.  Procedural History

Williams' DIB application has proceeded through two rounds of administrative consideration.  Round one most significantly involved a hearing before Administration Law Judge (ALJ) David A. Redmond and his subsequently issued written decision concluding that Williams was not under a disability.  (Tr. 12-20A).  After unsuccessfully appealing the ALJ's non-disability decision to the Appeals Council of the Social Security

---

[2] Impairments must also be either expected to cause death or last twelve months or longer.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

Administration, Williams sought recourse in this Court. *See Georgia Y. Williams v. Jo Anne B. Barnhart, Commissioner*, Case No. 3:03CV036 (filed Feb. 5, 2003); *see also* Tr. 226-42. The resulting decision resulted in remand because the ALJ did not weigh the opinions of Dr. Ross – Williams' treating mental health source – under the treating physician rule. (Tr. 240-41).

On remand, during Williams' second round of administrative proceedings, ALJ Redmond held another hearing and again concluded that Williams was not under a disability. (Tr. 192-216). Upon her unsuccessful administrative appeal, the ALJ's second non-disability decision became the Social Security Administrations's final decision. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Williams is now due.

  B. <u>**Factual Background**</u>

Williams was forty-eight years old when the ALJ issued his second decision, and she is therefore considered a "younger person" for purposes of resolving her DIB claim. *See* 20 C.F.R. §1563(c); *see also* Tr. 215. She attended school through the sixth grade, and is thus considered to have a "marginal education" for DIB-eligibility purposes. *See* 20 C.F.R. §404.1564(b); *see also* Tr. 215.

The parties have provided detailed and informative descriptions of Williams' medical records and other pertinent evidence contained in the administrative record. *See* Doc. #7 at 1-9; Doc. #9 at 1-5. In light of this, and upon consideration of the complete record, there is no need to fully reiterate the parties' descriptions. Still, identifying

several medical sources will help frame further review.

Dr. McIntosh examined Williams for the Ohio Bureau of Disability Determinations (Ohio BDD); he opined, in part, that Williams' ability to cope with work stress was severely limited. (Tr. 205).

Dr. Omana reviewed the record for the Ohio BDD, and checked boxes on two forms. (Tr. 131-48). She also reiterated a few of her opinions in brief notes with little, if any, supporting explanation. (Tr. 144, 148). Dr. Buban, a non-examining, record-reviewing medical source, testified during the ALJ's second hearing. (Tr. 346-55). The ALJ relied on the opinions of Dr. Omana and Dr. Buban to support his assessment of Williams' mental work abilities. (Tr. 207-08, 211-12).

### III.  STANDARDS OF REVIEW AND THE ALJ'S SECOND DECISION

#### A. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F.3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance....'" *Rogers v. Comm'r. of Soc. Sec.*,

486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). The required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F.3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**B.**     **Administrative Review**

The Commissioner has developed five sequential questions to determine if an individual is under a "disability":

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

5

  3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

  4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

  5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). If the ALJ makes "a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730 (citations omitted).

### C. The ALJ's Second Decision

The ALJ recognized that Williams met the insured-status requirements of the Social Security Act from May 25, 2000 (the date she became unable to work) through June 30, 2002 (her date last insured). (Tr. 214). Williams does not specifically challenge this finding. *See* Doc. #7 at 2-3, 10-15. Her potential DIB eligibility, then, is limited to her disability status from May 25, 2000 through June 30, 2002.

At Step 2, the ALJ concluded that Williams suffered from severe impairments of degenerative joint disease/impingement syndrome of the right shoulder, spinal strain, internal derangement of the left knee, and a depressive disorder with anxiety features. (Tr. 210).

The ALJ determined at Step 3 that Williams did not meet or equal the Listing

6

criteria for any disability.  (Tr. 215).

The ALJ concluded at Step 4 that Williams could perform light work[3] subject to certain limitations.  The key limitation disputed by the parties in this case was the ALJ's finding that Williams should be "permitted to alternate between sitting and standing as needed with the opportunity to sit as much as 15 minutes during every hour of work...." (Tr. 215).  Considering this and all her limitations, the ALJ concluded at Step 4 that she could not perform her past relevant work.  *Id*.

Proceeding to Step 5, the ALJ relied on the testimony of Mr. Brown, a vocational expert, who opined that a hypothetical person with Williams' ability could perform a limited range of light work and that numerous jobs were available to her in the regional economy (2,000 jobs) along with a proportionate number of jobs in the national economy. (Tr. 214).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Williams was not under a disability and hence not eligible for DIB or a period of DIB.  (Tr. 214-16).

---

[3] Under the Commissioner's Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

## IV.  DISCUSSION

### A.  Medical Source Opinions

**1.**

Williams contends that the ALJ did not weigh the opinions of Dr. McIntosh under the factors required by the Regulations but merely found his opinions consistent with those of Dr. Omana.

The Commissioner maintains that the ALJ properly concluded that Dr. McIntosh's opinions do not support the claim that Williams is under a disability.  The Commissioner further argues that the ALJ properly found Dr. McIntosh's opinions consistent with those of Dr. Omana.  And, the Commissioner contends that the ALJ properly relied on the opinions of both Dr. Omana and Dr. Buban.

**2.**

ALJs are required to evaluate every medical opinion of record, regardless of its source.  *See* 20 C.F.R. §404.1527(d).  The evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record.  20 C.F.R. §404.1527(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).  When these requirements are not met, the treating physician rule does not apply.  *Id*.  In this circumstance, the evaluation has only just begun, because ALJs must continue weighing the treating source's opinion under the following factors: "the length of the treatment

8

relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (discussing §404.1527(d)). Speaking through a Ruling, the Commissioner instructs:

> Adjudicators must remember that a finding that a treating source is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that it is not entitled to 'controlling weight,' not that the opinion must be rejected. Treating source medical opinions must still be weighed using all of the factors provided in 20 CFR 404.1527....

Social Security Ruling 96-2p, 1996 WL 374188 at *4.

As to non-treating medical sources, the Regulations require ALJs to weigh their opinions with the same factors – supportability, consistency, specialization, *etc*. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### 3.

The ALJ correctly described the above standards for evaluating medical source opinions. *See* Tr. 209. In doing so, he did not err as a matter of law. The remaining issues, then, concern whether the ALJ actually applied those factors – the correct legal

9

criteria – when weighing the medical source opinions, and if so, whether substantial evidence supports the ALJ's reasons for accepting or rejecting the medical source opinions.

Beginning with Dr. McIntosh's opinions, the ALJ concluded, "the degree of impairment described by Dr. McIntosh is not necessarily consistent with a 'disabling' mental disorder." (Tr. 205). In reaching this conclusion, the ALJ relied on the opinions of Dr. Omana, a record-reviewing psychologist. In doing so, the ALJ found their opinions to be consistent, *see* Tr. 205-06, a factor permitted by the Regulations. *See* §404.1527(d). But, a review of those opinions reveals inconsistency in three main areas.

First, Dr. Omana opined that Williams had no significant limitation in her ability to understand and remember very short and simple instruction, and she recognized that no evidence showed Williams was limited in her ability to understand and remember detailed instructions. (Tr. 146). In direct contrast, Dr. McIntosh found Williams to be moderately impaired in her ability to remember and carry out one- or two-step job instructions. (Tr. 130). Second, Dr. Omana thought Williams was moderately limited in her ability to work around others, including co-workers, supervisors, and the public (Tr. 147-48); while Dr. McIntosh reported and opined:

> Ms. Williams is socially withdrawn. She always had troubled working around others on the job and she worked an alternate work schedule so that she did not have much public contact. She would likely have even greater difficulty working around supervisors and co-workers....

(Tr. 130).

10

Third, Dr. Omana believed that Williams's ability to deal with ordinary work pressure was moderately limited. (Tr. 147-48). Dr. McIntosh, in contrast, found Williams' ability to withstand the stress and pressure of day-to-day work activity was "severely limited by her current deteriorated functioning based on her depression and anxiety." (Tr. 130).

Because of these three areas of inconsistency, substantial evidence does not support the ALJ's finding of consistency between Dr. McIntosh's and Dr. Omana's opinion.

As to Dr. Buban, who testified as a medical expert during the ALJ's second administrative hearing, the ALJ did not note Dr. Buban's presence at the hearing and did not summarize her testimony. The decision fails to mention Dr. Buban. The ALJ therefore did not weigh Dr. Buban's opinions under any regulatory factors. Such weighing was necessary not only because the Regulations required the ALJ to consider all the medical source opinions of record, but also because Dr. Buban's opinion in part supported Williams' position – specifically that a person with a severe limitation in her ability to handle stress would have difficulty reporting to work every day, five days a week, and working an eight-hour day. (Tr. 352-53). That testimony was significant since the ALJ was further required to assess Williams' mental work abilities and limitation on a "**regular and continuing** basis," meaning, "8 hours a day, for 5 days a week, or an equivalent work schedule...." Soc. Sec. Ruling 96-8p, 1996 WL 174184 at *2 (emphasis in original). This part of Dr. Buban's testimony along with Dr. McIntosh's opinions

11

became critically important when the vocational expert testified, in essence, that no jobs would be available to a hypothetical person so severely limited. (Tr. 357).

Accordingly, Williams challenges to the ALJ evaluation of the medical source opinions are well taken.

### B. The Vocational Experts' Testimony

Williams contends that the ALJ's decision at Step 5 is not supported by substantial evidence, because the ALJ did not include all her work limitations in the hypothetical question posed to the vocational expert. The missing limitation Williams points to concerned her ability to sit/stand as needed as much a fifteen minutes during every hour of work. Williams emphasizes that the ALJ found her to be limited in this way. (Tr. 215).

The Commissioner contends that during Williams' first round of administrative proceedings, a vocational expert Ms. Ewers testified about the number of jobs available to a person with this sitting restriction. According to the Commissioner, Ms. Ewers' testimony during the earlier hearing constitutes substantial evidence in support of the ALJ's conclusions at Step 5 in this case.

The Commissioner, at Step 5, had the burden to show that Williams possessed the ability to perform other substantial gainful activity that exists in the national economy. *See Varley v. Secretary of Health & Human Services* 820 F.2d 777, 779 (6th Cir. 1987). To meet this burden, there must be a finding supported by substantial evidence that Williams has the vocational qualifications to perform specific jobs. *Id*. (citation omitted).

A vocational expert's answers to hypothetical questions may constitute such substantial evidence, but only if the questions accurately portray the claimant's individual physical and mental impairments. *Id*.; *see Smith v. Halter,* 307 F.3d 377, 378 (6th Cir.2001); *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

During the second administrative hearing, the ALJ's hypotheticals did not include the sit/stand limitation he set when assessing Williams' residual functional capacity. *See* Tr. 356-57. The Commissioner contends that the record contains substantial evidence in support of the ALJ's findings at Step 5, because during the ALJ's hypotheticals during both of the administrative hearings accurately described Williams' limitations. This contention lacks merit.

Again, the ALJ set the following sit/stand restriction during Williams' second round of administrative proceedings:

> she should have been permitted to alternate between sitting and standing as needed with the opportunity to sit as much as 15 minutes during every hour of work....

(Tr. 215). The ALJ's hypothetical during the first administrative hearing asked the vocational expert to consider a person who needed "the latitude to get off her feet for short periods, say 15 minutes an hour." (Tr. 40). Although this limitation identifies Williams' need to sit for 15 minutes per hour, it does not include the ALJ's other finding – that Williams needed to be able to alternate sitting and standing "as needed." *See* Tr.

13

215. This draws a fine distinction between the two sets of sit/stand limitations, but the distinction is warranted. It is reasonably likely that many of the available jobs recognized by the vocational expert would become unavailable to a hypothetical person who was limited to alternate between sitting and standing "as needed" resulting in up to fifteen minutes per hour of sitting. In light of this, and because the burden of proof switches to the Commissioner at Step 5, *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997), Williams is correct that the vocational expert's testimony during the first administrative hearing does not correct the incomplete and inaccurate hypothetical during the second administrative hearing. And, as such, the vocational experts' answers considered alone or together do not constitute substantial evidence in support of the ALJ's findings at Step 5 in his second decision.

Accordingly, Williams' contentions at Step 5 are well taken.

## V. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of*

*H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Williams, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Williams was under a disability and thus eligible for DIB during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Georgia Williams was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

January 30, 2008

                                                  s/ Sharon L. Ovington
                                                   Sharon L. Ovington
                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).